DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Utron Knowles has appealed his conviction from the Lorain County Court of Common Pleas, which found him guilty of burglary. This Court affirms.
 I {¶ 2} On September 18, 2003, Appellant was indicted on one count of burglary, in violation of R.C. 2911.12(A)(2). Following a bench trial on March 4, 2004, the court found Appellant guilty of violating R.C. 2911.12(A)(1), a second degree felony, and sentenced him to two years incarceration. Appellant has timely appealed this conviction, asserting a single assignment of error.
 II Assignment of Error Number One
"The trial court erred to the prejudice of appellant when it entered judgment of conviction, where such judgment was against the manifest weight of the evidence."
 {¶ 3} Under his sole assignment of error, Appellant has argued that his burglary conviction was against the manifest weight of the evidence. Specifically, Appellant has asserted that the State did not provide sufficient evidence to overcome his alibi defense or offer compelling proof of anything more than the victim's testimony, which Appellant asserts is unreasonable. Thus, the State did not prove all of the necessary elements of burglary. We disagree.
 {¶ 4} The Ohio Supreme Court has established the standard for reviewing an appellant's claim that the trial court decision was against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280. Furthermore:
"In determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." (Quotations and edits omitted.) Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80 n. 3.
That is, "a court of appeals [must] be guided by a presumption that the findings of the trier-of-fact were indeed correct." Id. at 80.
"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. See, also, State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Thus, reversal on manifest weight grounds is reserved for the exceptional case where the evidence demonstrates that the "trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed."State v. Otten (1986), 33 Ohio App.3d 339, 340. Accord Statev. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 5} In the present case, Appellant was convicted of burglary:
"(A) No person, by force, stealth, or deception, shall do any of the following:
"(1) Trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense[.]" R.C. 2911.12(A)(1).
 {¶ 6} Appellant contests the conviction on three bases, arguing: (1) that the State did not prove the culpable mental state; (2) that the State did not prove a burglary or disprove other reasonable explanations for the victim's alleged scenario; and (3) that the State did not prove that Appellant was the burglar, particularly in light of his alibi defense.
 {¶ 7} When the disputed issue is the defendant's culpable mental state, such as a defendant's intent, proof often must be derived from circumstantial evidence, as direct evidence will seldom be available. State v. Lott (1990), 51 Ohio St.3d 160,168, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591,112 L.Ed.2d 596. Accordingly, it is well settled that the State may rely on circumstantial evidence to prove an essential element of an offense, as "[c]ircumstantial evidence and direct evidence inherently possess the same probative value[.]" State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph one of the syllabus. In reaching its conclusion, the trier-of-fact must weigh all the evidence, circumstantial or direct, against the standard of proof of beyond a reasonable doubt. Id. at 272.
 {¶ 8} Next, we recognize: "It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." (Citation and quotations omitted.) Lott, 51 Ohio St.3d at 168. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. Id., citing Hurt v.Charles J. Rogers Transp. Co. (1955), 164 Ohio St. 329, 334. By this understanding, a trier-of-fact may infer intent to burgle as the logical result of the predicate act of breaking-and-entering, based on the totality of the facts and circumstances of the entry, the testimony presented at trial, and the credibility or demeanor of the witnesses.
 {¶ 9} Finally, we note that Ohio courts have exhibited a consistent willingness to hold that the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration. State v. Matha (1995),107 Ohio App.3d 756,759, citing State v. Lewis (1990), 70 Ohio App.3d 624,638. See State v. Economo (1996),76 Ohio St.3d 56, syllabus. Thus, the testimony of the victim as to the identity of the burglar and the circumstances of the entry may be enough. We need not search for additional, corroborating evidence.
 {¶ 10} At trial, the State presented testimony from two witnesses: the victim and the responding police officer. The victim testified that he had known the Appellant for many years, the two having grown up together. Currently, the victim is a residential landlord and just before the burglary he had begun to employ the Appellant to do minor work at his leased premises, afforded him the use of a truck and a vacant apartment, and invited him into his home. However, following an altercation, the victim had ordered Appellant out of the apartment, and later suspected Appellant of breaking into his home when he was away for the night. It had become the victim's custom to spend nights at his girlfriend's home, leaving his own home unattended.
 {¶ 11} On July 24, 2003, the night in question, the victim was asleep in his home when, at approximately 3:30 a.m., he awoke to his dog barking. In the dark, he circled the house, looking out the windows until he spotted the Appellant approaching. The victim hid near the light switch and waited while the Appellant knocked loudly at the front door. Then, he heard the window opening and saw the Appellant entering through the window with a lit cigarette lighter extended over the barking dog in its cage. Once inside, the Appellant shined a flashlight on the couch, where the victim would usually sleep, and finding no one asleep there, proceeded to the living room where the victim keeps his money.
 {¶ 12} The victim then turned on the lights and confronted the Appellant, calling him by name and warning him to get out. The Appellant protested, but when the victim began to call the police, the Appellant fled. When the police officer arrived, the victim gave a statement and filed a report. On cross-examination, the Appellant's attorney repeatedly suggested that Appellant was not the burglar, to which the victim emphatically insisted that the Appellant was the burglar, that he saw him, that he knew him, and that Appellant ran away.
 {¶ 13} The State next called the responding officer as a witness, to give an account of his investigation. The officer testified that upon being called to the scene, he and his partner checked the immediate area for the Appellant, assessed the outside window, and took a statement from the victim. Although they did not locate the Appellant in the area, they did discover that the screen had been pried off of a window from the outside and the window stood open. However, they were unable to collect usable fingerprints. The officer then recounted the victim's statement of the events made at that time, providing a version consistent with the victim's testimony summarized above. On cross-examination, the Appellant's defense attorney established that the officer did not collect any fingerprints and did not record a description of the burglar, to which the officer responded that the victim had already identified the burglar as the Appellant.
 {¶ 14} The State rested its case and the Appellant's attorney called his sole defense witness, the Appellant's acquaintance, to provide an alibi for the Appellant on the night of the burglary. This witness testified that the Appellant was his friend and was at his home on the day in question for the purpose of working on his car. Furthermore, he testified that the Appellant had spent the night at his home on that particular night; specifically, that the Appellant was there when he went to bed at about 2:30 a.m. and when he awoke at about 10:00 a.m.
 {¶ 15} On cross-examination, the State first established that this witness had been previously convicted of at least five separate felonies. Next, the witness explained that because the Appellant is the uncle to his wife, he considers the Appellant family and has a certain interest in keeping him out of trouble. Furthermore, the witness acknowledged that he is a heavy sleeper and the Appellant could have left while he was asleep. Finally, the witness conceded that he never reported to the police that the Appellant had been at his house that night. Rather, he first told the Appellant's attorney of this alibi on December 3, 2003, during which time the Appellant had spent four and a half months in county jail awaiting trial. When pressed, the witness could not explain why he waited, but did admit that he contacted the attorney shortly after the Appellant had contacted him from jail.
 {¶ 16} In rendering its decision, the trial court judge, sitting as the finder-of-fact in this bench trial, expressly stated that he found the victim to be more credible than the alibi witness, and found the Appellant guilty of burglary. The victim unequivocally identified the Appellant as the burglar and described conduct that clearly supports an inference of culpable intent. Furthermore, the alibi witness was not so persuasive.
 {¶ 17} Therefore, after careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the trial court clearly lost its way when it found Appellant guilty of burglary. The trial court was in the best position to adjudge the credibility of witnesses and give proper weight to their testimony. See DeHass, 10 Ohio St.2d 230, paragraph one of the syllabus. The credible testimony of the victim and the officer established that Appellant committed the crime. The testimony of the Appellant's alibi witness was not as credible or persuasive.
 {¶ 18} Based on the foregoing, this Court cannot find that Appellant's conviction was against the manifest weight of the evidence. Accordingly, Appellant's sole assignment of error lacks merit.
 III {¶ 19} Appellant's assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Batchelder, J., Boyle, J., concur.